## HASTINGS LUMBER CO. v. GARLAND.

(Circuit Court of Appeals, First Circuit. April 29, 1902.)

### No. 395.

1. INJURY TO EMPLOYE—DECLARATIONS—ADMISSIBILITY IN EVIDENCE.

The boiler of a locomotive engine owned by defendant exploded, causing the death of pláintiff's decedent, the engineer. It appeared that the engine had been purchased from another corporation, which had sent it away to be repaired. The repairs were made under the inspection of one S., an engineer employed by the seller, and who continued as such in the service of defendant. It did not appear that S. had any duties in the way of superintendence. *Held*, that reports made to S., while he was the seller's engineer, by the men repairing the engine, as to the condition of the stay bolts (the giving way of which presumably caused the explosion), were inadmissible, where not shown to have been communicated by S. to defendant.

2. ACTIONS FOR WRONGFUL DEATH—ELEMENTS OF DAMAGE—PHYSICAL SUFFERING—EVIDENCE OF—SUFFICIENCY.

Pub. St. N. H. c. 191, § 8, provides that actions of tort for physical injuries to the person shall survive to the extent set forth in the follow-

ing sections. Section 12 declares that if decedent's administrator is plaintiff, and the death of the party was caused by the injury complained of in the action, the mental and physical pain suffered by him in consequence of the injury, etc., may be considered as an element of damage. In an action for an injury by a locomotive explosion, causing the death of the locomotive engineer, it merely appeared that the explosion had occurred, and that decedent's body was found on the snow about 200 feet away, with life extinct and showing no signs of mangling, with blood escaping from the mouth, nose, and ears. *Held* error to submit to the jury the issue of physical suffering as an element of damages.

**2. SAME—PHYSICAL SUFFERING—EVIDENCE.**

The New Hampshire decisions on the question of the sufficiency of proof of physical suffering examined.

In Error to the Circuit Court of the United States for the District of New Hampshire.

Robert N. Chamberlin (George F. Rich, on the brief), for plaintiff in error.

Crawford D. Hening (Irving W. Drew, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is a statutory suit, brought in the district of New Hampshire, in behalf of the administrator of the estate of Harry Belmont, who was a locomotive engineer in the employment of the Hastings Lumber Company, the defendant below. It was tried to a jury, and the verdict was for the plaintiff below, and the defendant below sued out this writ of error. It will be convenient in this opinion to describe the plaintiff in error as the defendant, and the defendant in error as the plaintiff. The declaration alleges substantially that it was the duty of the defendant to furnish the plaintiff's intestate a safe locomotive, that the defendant negligently omitted so to do, and that the locomotive furnished was dangerous, unsafe, and unfit for use, so that the boiler exploded and caused his death. The suit was based on sections 8–13, c. 191, Pub. St. N. H., as amended by section 5, c. 67, Laws 1893. We need repeat only sections 8 and 12 of chapter 191, as follows:

"Sec. 8. Actions of tort for physical injuries to the person, although inflicted by a person while committing a felony, and the causes of such actions, shall survive to the extent, and subject to the limitations, set forth in the five following sections, and not otherwise."

"Sec. 12. If the administrator of the deceased party is plaintiff, and the death of such party was caused by the injury complained of in the action, the mental and physical pain suffered by him in consequence of the injury, the reasonable expenses occasioned to his estate by the injury, the probable duration of his life but for the injury, and his capacity to earn money may be considered as elements of damage, in connection with other elements allowed by law."

The first question before us arises with reference to the refusal of the court to admit certain evidence, the record as to which is substantially as follows: It appeared that the railroad, on which the locomotive which exploded was operated, was used for lumbering purposes, and was purchased, with the locomotive, from another

corporation, by which the locomotive had been sent to Portland for repairs. The repairs were made under the inspection of one Sawyer, who testified as a witness for the defendant. Sawyer had been a locomotive engineer for the corporation from which the property was purchased, and continued as such in the service of the defendant. There was a suggestion at bar that he had some duties in the way of superintendence, but the record fails to show any facts to that effect. It appears that the workmen who made the repairs at Portland reported in reference thereto to Sawyer. In his examination, the defendant, after proving the facts stated, put to Sawyer this question: "What was the report they [that is, the repairers] made with respect to the condition of the stay bolts?" Presumably the giving away of the stay bolts resulted in the explosion which caused Belmont's death. The court inquired whether the defendant proposed to show that this report was made known to it, to which it replied in the negative. Thereupon, the court observed that what the repairers reported to Sawyer would be evidence if he repeated it to the defendant, but that it was not competent unless it was thus connected. Thereupon the evidence was excluded. The record does not show that the defendant communicated to the court any special grounds for the admission of the evidence, or any reason why it was admissible unless the information derived from the repair men was made known to the defendant. We cannot assume that it was offered on any proposition, except the allegation in the plaintiff's declaration that the defendant "negligently" failed to furnish a proper locomotive; that is to say, as bearing on the question of reasonable care on the defendant's part. Inasmuch as it does not appear that the witness stood in the place of the corporation with reference to the care of its locomotives, we are unable to perceive how any information given him, but not so communicated, can bear on that question. We are compelled to hold, therefore, that this ruling was correct.

The remaining question relates to that portion of the statute which, in a suit of this character, permits the consideration, as an element of damages, of physical pain suffered by the deceased. On this point the defendant submitted the following request for an instruction to the jury:

"In the determination of this question the jury should entirely exclude any damages by reason of any supposed physical pain or suffering, and also any expense to their estates for funeral or burial, as there is no evidence which would justify any allowance upon these grounds."

Inasmuch as this request combines two separate matters, it would, under some circumstances, be ineffectual; but, as it is plain that the particular topic which we are asked to consider was brought to the attention of the court below, so that it properly understood it and understandingly ruled on it, the question fairly comes before us. With reference to that part of the request which concerns the intestate's supposed physical pain, the court submitted the issue to the jury, and expressly authorized them to consider whether the intestate suffered either physical or mental pain, and directed them that, if he did, they should estimate the same according to their best

judgment, so far as they could place a money value upon it, or as nearly as they could compensate therefor. The court added, however, that, if the jury were satisfied that death was instantaneous, or that, if the intestate hardly knew, if he knew at all, what killed him, they would "probably lay that feature of the case away, without giving it very serious consideration." It is to be noted, however, that, even in that event, the court did not direct the jury to wholly disregard this element. It is claimed by the defendant, as stated in the request, that there were no facts to support any allowance for physical suffering. Of course, on the ordinary rules of law, if there were none, the court was not justified in submitting the issue to the jury, and should have ruled that they could not make any compensation in that behalf. The facts, so far as we can discover, show that the explosion was of such a character as to support no theory from which any hypothesis, based upon evidence, can be sustained with reference to any supposed physical suffering of the deceased. All that is known is that there was an explosion, and that the body of the deceased was found on the snow about 200 feet away, with life extinct, and showing no signs of mangling, with blood escaping from the mouth and nose and ears.

Although the ordinary rules of law throw on the plaintiff the burden of maintaining every part of his case, including all the elements of damages, by a preponderance thereof, he calls our attention to no proofs whatever from which it can be properly inferred that the deceased suffered any physical pain. In a word, while possibly one may indulge in an hypothesis on the question of suffering of some kind for a period of time so short that it is not appreciable to human reason, yet there is in this case no basis for any conclusion either way in reference thereto. Therefore, as the jury rendered a verdict for the plaintiff in one gross sum, so that it is impossible to determine whether they included therein any compensation in this behalf, or, if yes, how much, the plaintiff must bear the consequences of a ruling which involved so much probability of a result injurious to the defendant. The plaintiff hardly contests these propositions so far as we have stated them. He apparently maintains that the instructions of the court to the jury were justified by the practice of the supreme judicial court of New Hampshire, the statutes and laws of which state control this suit. He relies on Clark v. City of Manchester, 62 N. H. 577, Corliss v. Railroad, 63 N. H. 404, and Clark v. City of Manchester, 64 N. H. 471, 13 Atl. 867. Of course, any line of decisions, in order to be invoked successfully to parry such fundamental rules as those which we have stated, must be close to the point, and positive, decisive, and steadily maintained.

Clark v. City of Manchester, 62 N. H. 577, does not touch the question we have before us. It was based on Act July 18, 1879, c. 35, § 1, as follows:

"When the death of a person is caused by a wrongful act or neglect of another which, if death had not ensued, would have entitled the person injured to recover damages therefore, then, on the death of such person, his administrator or executor may, by suit brought within two years of such death, recover damages for the injury; and one-half of such damages shall go to the widow or widower, and if no widow or widower, to the

heirs of the deceased, according to the law regulating the distribution of intestate estates."

Unlike the statute upon which the present suit is based, this act omitted to enumerate any elements of damage. In the eyes of the statute, although the damages were given to the family of the deceased, yet the action for the survival of which it provided was strictly one in his behalf; and it left the court to determine what were the proper elements of damages without any guide. Under such a statute, it might well have been held, in some views of it, that there was a basis for substantial damages, even if death followed immediately the unlawful violence or neglect. Bearing on this is the statement in the opinion, at page 584, that "practically and in substance, though the intervening time might be very brief, an injury causing death, or resulting in death, must precede death in point of time." This cannot be denied, and it leads directly to the only proposition which the case determined. The question whether the jury might take into consideration compensation for "mental and physical pain," in the absence of any proof that mental or physical pain was suffered, did not arise. The case is easily disposed of on the hypothesis that it may have proceeded on the view of the law that the mere fact of death, caused by something which necessarily preceded it, damaged the deceased, at least to the extent of the financial surplus which he might have gained if he had lived, within the construction given to like statutes in Kelley v. Railroad Co. (C. C.) 48 Fed. 663, Railroad Co. v. Clarke, 152 U. S. 230, 14 Sup. Ct. 579, 38 L. Ed. 422, and Suth. Dam. (2d Ed.) 277.

The next case is Corliss v. Railroad, 63 N. H. 404, where, under the same statute of 1879, the trial court ruled that only nominal damages could be recovered. This might well have been held erroneous for the reasons we have already stated. It was, perhaps, also erroneous because the plaintiff's intestate was killed by being run over by a locomotive while he was driving along the highway and crossing a railroad track. The jury might, perhaps, have been justified in presuming that the deceased had some apprehension of the approaching locomotive before the collision, and that, therefore, there was a very appreciable space of time in which he might have suffered mentally from that apprehension; but the circumstances in this respect are not fully reported. The opinion merely states the ordinary grounds of damages to be considered by the jury, without specifically passing on the question whether the case afforded any evidence which would have justified the consideration of any particular element thereof.

In Clark v. City of Manchester, 64 N. H. 471, 13 Atl. 867, where, after a verdict, the facts involved in Id., 62 N. H. 577, came fully before the court, it appeared that the deceased lost his life by drowning. The point decided was that the fact that the death was caused by drowning in "stagnant, muddy, and slimy water" must be regarded as affording competent evidence from which a jury might infer, not only that the death was not instantaneous, but that it was attended by both physical and mental suffering. This involved no proposition that a jury might proceed without any probative circumstances. It expressed the view of the court as to what might be assumed to be known to common experience, in which the court differed from the

opinion in The Corsair, 145 U. S. 335, 348, 12 Sup. Ct. 949, 36 L. Ed. 727, to the effect that the fright of a drowning person for a few minutes is too unsubstantial a basis for a separate estimate of damages. In Clark v. City of Manchester, the opinion pronounced that the death "was not instantaneous," meaning, of course, in the common meaning of the expression; and it can be accepted only as expressing the views of the court with reference to what facts were sufficient, in that particular case, to go to the jury, and not at all as maintaining the proposition that compensation for either mental or physical suffering can be awarded where there are no probative circumstances.

On the whole, while there may well be doubt as to the full effect of these decisions, it seems to us that they are not of the character which we have said is necessary to overrule the principles of evidence ordinarily applicable under the circumstances of this suit. Although the cases are not exactly parallel, because not based on statutes constructed on the lines of that now before us, yet we are supported in our conclusions by the expressions in The Corsair, ubi supra, and by the assessment of damages which we made in The Robert Graham Dun, 17 C. C. A. 90, 70 Fed. 270, 272.

The judgment of the circuit court is reversed, the verdict set aside, and the case is remanded to that court for further proceedings in accordance with law; and the plaintiff in error recovers the costs of appeal.

WEBB, District Judge, concurs in the result.