FAIRGRIEVE et al. v. MARINE INS. CO. OF LONDON.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1899.)

No. 1,144.

1. ADMIRALTY JURISDICTION—SUIT BETWEEN FOREIGNERS.

The admiralty courts of the United States have jurisdiction over suits between foreigners, if the subject-matter of the controversy is of a maritime nature, and the ship or party to be charged is within the jurisdiction of the court. It is a jurisdiction the court may decline to exercise if for some special reason it appears to be inexpedient to exercise it, but a suit by a foreign marine insurance company against a vessel within the jurisdiction of the court, based on a right claimed under a policy of insurance issued in the United States, is one of which the court is not justified in declining jurisdiction.

2. PARTIES TO SUIT FOR COLLISION—SUIT BY UNDERWRITERS.

Where a marine insurance company has paid the full value of an injury to a vessel by collision caused by the fault of another vessel, so that there are no other claimants entitled to sue for the tort, it is subrogated to the right of action of the insured, and may maintain a suit against the offending vessel in its own name; but, when the value of the property destroyed exceeds the insurance money paid, the suit must be brought in the name of the insured, who may recover for the entire loss, as trustee for the insurance company as to the amount it has paid, and in his own right as to the remainder.

Appeal from the District Court of the United States for the District of Minnesota.

The Marine Insurance Company, Limited, of London, England, the appellee, libeled the Canadian steamer Arabian, in the Fifth division of the United States district court for the district of Minnesota. The libel alleged, in substance, that the insurance company issued a policy of insurance on the Canadian schooner barge Minnedosa; that, as the Minnedosa was going down the Welland Canal, the Arabian was going up the canal, and was so negligently managed that she inflicted on the Minnedosa damages to the extent of $15,000 and more; that the policy contained a clause by the terms of which, in the event of loss or damage paid by the insurance company to the owners, the claim of the insured against any third party liable for the damage was assigned, to the extent of the amount paid, to the insurance company; and that, of the $15,000 and upwards of damage, the libelant had paid to the owners $8,051.20, and so by the terms of the policy, and because of such payment, became subrogated and entitled to sue in its own name for that part of the damages which libelant had paid. Before answering the libel, the claimants, J. B. and Hugh Fairgrieve, the appellants, citizens of the dominion of Canada, made protest and application to the district court to decline to entertain jurisdiction, because all the parties were British subjects; the subject-matter, the locality of the tort, and the parties being foreign to this country, and all citizens of the same foreign jurisdiction in which the tort occurred and the property belonged. The Arabian being within the jurisdiction of the court, this application was denied, and thereupon the appellants filed their claim and answer. Article 10 of the libel reads: "Tenth. That, under the terms of said policy of insurance, and because of the payment of said sum of $8,051.20 to the said Montreal Transportation Company on account of said loss, the libelant became subrogated to the rights and claim of said Montreal Transportation Company against said steamer Arabian, and became thereby authorized and empowered to file this libel against the said steamer." The answer to this article of the libel is as follows: "(9) Your respondents deny the allegations of article tenth of the libel, and expressly deny the right, either by the terms of the contract or otherwise, of the libelant to file said libel in its own name against the said steamer Arabian. (10) Your respondents deny that by reason of the premises, by reason of the allegations in the libel, or for any reason, the libelant is entitled to recover and

receive of the said steamer Arabian the sum of eight thousand fifty-one and $^{20}/_{100}$ dollars, with interest, or any sum whatever, or to prosecute this action therefor in the manner and form as it attempts to do, and admits that the respondents have refused, and do refuse, to pay that sum or any part thereof."

Harvey D. Goulder (Searle & Spencer, on the brief), for appellants.
C. E. Kremer, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge (after stating the facts as above). The objection to the jurisdiction of the district court is not tenable. Though the appellee is a foreign insurance company, its policy was issued at Chicago, in the state of Illinois, and no law of comity is violated by litigating any rights claimed under or growing out of the policy in the courts of the country where it was issued and by whose laws its validity must be determined. It is the settled law of this country that our admiralty courts have jurisdiction over suits between foreigners, if the subject-matter of the controversy is of a maritime nature, and the ship or party to be charged is within the jurisdiction of the court. It is a jurisdiction the court may decline to exercise where, for some special reason, it appears to be inexpedient to exercise it, but there is no fact disclosed by this record that would justify the district court in declining to take jurisdiction of this case. 2 Pars. Mar. Law, 543; Taylor v. Carryl, 20 How. 611; The Belgenland, 114 U. S. 355, 5 Sup. Ct. 860; Enos v. Sowle, 2 Hawaii, 332; Warren v. The Benjamin Rush, Id. 478.

It will be observed that the libelant avers that the damage to the Minnedosa was $15,000 and more, of which the libelant has paid $8,051.20 only. The remaining damage is due to the assured or other insurers, and there is no averment in the libel that it has been paid or discharged, or is no longer a subject of contention between the insurers and the assured, or those who may be subrogated to the rights of the assured. Upon this state of facts, can the insurance company maintain this action in its own name? The contention that this objection was not raised in the claim and answer is not supported by the record, as plainly appears from portions of the libel and the answer quoted in the statement. Neither the common law nor code practice and pleadings obtain in admiralty. Under the practice in admiralty, the right of the libelant to sue could not be raised by demurrer or plea in abatement, but could be raised only by the answer, as was done. Rule 27 of the rules of practice in admiralty prescribed by the supreme court of the United States requires that "the answer shall be full, explicit, and distinct to each separate article and separate allegation in the libel, in the same order as numbered in the libel." The answer in this case conforms to this rule, and took issue with the averment in the libel that the libelant was "authorized and empowered to file this libel against the said steamer," and expressly denied the right "of the libelant to file said libel in its own name."

If the libelant can maintain this action in its own name, then a claim arising out of a single tort may be split, and give rise to as many different actions as there may be subrogated underwriters,

and one additional action to the owner for his damages, and these actions may be prosecuted in different jurisdictions, and the tort feasor called upon to repeat any defense that he may see fit to present in as many different suits in different jurisdictions as there are parties interested. This precise question was before this court in the case of Norwich Union Fire Ins. Soc. of Norwich v. Standard Oil Co., 19 U. S. App. 460, 8 C. C. A. 433, 59 Fed. 984, and we there held that, when an insurance company pays to the insured the amount of a loss on the property insured, it is subrogated in a corresponding amount to the right of action to the insured against any other person responsible for the loss. This right of the insurance company against such other person is derived from the insured alone, and can be enforced in his right only. At common law, it must be asserted in the name of the insured; in a court of equity, or of admiralty, or under the modern codes of practice, it may be asserted by the insurance company in its own name, when it has paid the insured the full value of the property destroyed; but, when the value of the property destroyed exceeds the insurance money paid, the suit must be brought in the name of the insured. In such an action the insured may recover the full value of the property destroyed from the wrongdoer, but as to the amount paid him by the insurance company he becomes a trustee, and the wrongdoer will not be permitted to plead a release of the cause of action from the insured, or to set up as a defense the insurance company's payment of its part of the loss. That case was exhaustively argued for the insurance company by able counsel, and received the careful consideration of the court. To the authorities then cited in support of the ruling of the court may be added the case of Continental Ins. Co. v. H. M. Loud & Sons Lumber Co., 93 Mich. 139, 53 N. W. 394. We see no reason to depart from the conclusion then reached. It will be open to the libelant, when the record is returned to the district court, to amend its libel, and show, if it can, that the excess of damages over the sum for which it sues has been paid, released, or otherwise extinguished, so that the claimants are no longer liable to an action therefor at the suit of any one. In the absence of some such showing, the libel will have to be dismissed. Upon this record our judgment in Norwich Union Fire Ins. Soc. of Norwich v. Standard Oil Co., supra, is decisive, and the decree of the district court must be reversed and remanded for further proceedings in accordance with this opinion. It is so ordered.